Maxwell Shapiro, J.
This holdover proceeding was instituted by Cannoneer Corporation (hereinafter referred to as the “ landlord ”) against Peno Caminar ata, (hereinafter referred to as the “tenant”) to recover possession of premises described as “ 133 East 55th Street, being also 656 Lexington Avenue, N. Y. C., N. Y. (North Store) ” (hereinafter referred to as the “ subject premises ”).
It is alleged in the petition herein that the provisions of the Emergency Business Space Bent Control Law (L. 1945, ch. 314, as amd.) are inapplicable to the subject premises because on May 23, 1957, De Vance Realty Corporation, landlord’s predecessor in interest, transmitted to the tenant an offer by registered mail to enter into a lease for a term of one year commencing July 1, 1957 and ending June 30, 1958, at a rental in the same amount as the “emergency rent” for the subject premises and otherwise on substantially similar terms and conditions existing with respect to the tenancy; that the tenant accepted said offer and entered into a lease upon the terms proposed and that upon the expiration of the said lease, to wit: June 30, 1958, the tenant’s right to the possession of the subject premises under the Emergency Business Space Rent Control Law terminated. It was further alleged in the petition *537 that at least 30 days prior to August 31, 1962, the tenant was personally served with a notice in writing of the landlord’s election to terminate the tenancy and of its intention to commence summary proceedings to remove the tenant unless the tenant removed from the subject premises on August 31,1962.
In his answer, the tenant set forth a general denial, and as a separate and distinct defense alleged that the tenant has been in continuous possession of the subject premises since May 15,1939; that on June 1,1944, the rent payable to the landlord was $90 a month; that no rent in excess of the ‘1 emergency rent ” as of June 1,1944, was ever fixed by agreement or by the Supreme Court as provided in section 2 of chapter 314 of the Laws of 1945; that the landlord’s offer to enter into a lease, and the lease executed by the tenant on July 1, 1957, providing for a monthly rental of $135, did not effect the decontrol of the subject premises at the end of the term of said lease since the said rental was not the ‘ ‘ emergency rent ’ ’ as provided in said statute and that the said lease was not upon substantially similar terms and conditions as the prior lease.
Upon the trial, all of the relevant and material facts were either admitted or undisputed. Those facts are as follows: In May, 1939, landlord’s predecessor in interest, De Vance Realty Corporation, entered into a lease of the subject premises with the tenant herein for a term of three years commencing May 15,1939, and ending May 14, 1942; that the rental paid by the tenant for the subject premises on June 1, 1944, was $90 a month; that the tenant used the subject premises as a “ store ” as that term is defined in the Emergency Business Space Rent Control Law (L. 1945, ch. 314, § 2, as amd. by L. 1951, ch. 430, § 2, subd. [1]); that on May 24, 1957, the tenant received a registered letter dated May 23, 1957, from the landlord’s predecessor containing the offer to enter into a lease as alleged in the petition; that the tenant accepted the said offer and entered into a lease of the subject premises for a term of one year commencing July 1, 1957 and ending June 30, 1958, at a rental of $135 a month and that the tenant was served with due and timely notice of the landlord’s election to terminate the tenancy on August 31,1962.
Thus, the only questions remaining for this court to determine are whether the rental of $135 a month reserved in the lease commencing July 1, 1957, and ending on June 30, 1958, constituted the “ emergency rent ” for the subject premises, as that term is defined in the Emergency Business Space Rent Control Law and whether the said lease was otherwise on substantially similar terms and conditions as the prior lease.
*538 The offer of the landlord’s predecessor in interest to enter into a lease with the tenant, as set forth in the registered letter of May 23, 1957, was predicated upon section 8 (snbd. [gg], par. [1]) of the Emergency Business Space Bent Control Law (added by L. 1956, ch. 735, § 2, eff. April 17, 1956). The effect of the tenant’s acceptance of the said offer, and execution of a lease embodying the terms and conditions thereof, if said terms and conditions complied with section 8 (subd. [gg], par. [1]), was to render inapplicable to the subject premises the possessory rights conferred upon the tenant by the Emergency Business Space Bent Control Law, subsequent to the date of expiration of said lease. (Emergency Business Space Bent Control Law, § 12 ; L. 1945, ch. 314, § 12, as amd.)
With respect to the tenant’s contention that the lease offered him on May 23,1957, and executed by him for a term of one year commencing July 1, 1957 and ending on June 30, 1958, was not upon substantially similar terms and conditions as the prior lease entered into in May, 1939, it must be observed that both said leases are on “ Blumberg’s Improved Grilsey Form Lease-185 ”, and although the form had been revised in some respects at the time the latter lease was executed, I find that the lease proffered to the tenant and executed by him in 1957 was on substantially similar terms and conditions as existed with respect to the earlier lease. Thus the only question remaining for determination is whether the rental of $135 a month reserved in the latter lease constituted the ‘ ‘ emergency rent ’ ’ for the subject premises as that term is defined in the aforesaid statute.
The term “emergency rent” is defined in subdivision (c) of section 2 of chapter 314 of the Laws of 1945, as amended by chapter 452 of the Laws of 1957. That section, in pertinent part, provides as follows: “ (c) ‘ Emergency rent.’ The rent reserved or payable under any lease, agreement or tenancy of business space in force on June first, nineteen hundred forty-four, plus fifty per centum of such rent * * * provided further that if the tenant’s lease, agreement or tenancy of business space was made, executed or entered into prior to June first, nineteen hundred thirty-nine and the same or any renewal or extension thereof has been continuously in force since that date, a rent, exceeding in amount the emergency rent, may be fixed by the tenant and the landlord by written agreement in accordance with the provisions hereinbelow contained, or upon the landlord’s application shall be-fixed by the supreme court, in which case the rent to be so fixed by the supreme court shall be equal to the emergency rent chargeable for the most nearly *539 comparable business space in the same building or other rental area under any lease, agreement or tenancy thereof made, executed or entered into on or after June first, nineteen hundred thirty-nine but prior to June first, nineteen hundred forty-four.” (Emphasis supplied.)
It is the landlord’s contention that since the rental paid by the tenant for the subject premises on June 1, 1944, was $90 a month, the 1 ‘ emergency rent ’ ’ therefor as defined in the aforesaid section is an additional 50% of such rent; that is $45 a month, making an aggregate of $135 a month.
The tenant first entered into possession of the subject premises under a lease with the landlord’s predecessor in interest in May, 1939. The proviso to subdivision (c) of section 2, above quoted, was added thereto by chapter 823 of the Laws of 1947. It was not until 1957 (L. 1957, ch. 452, § 1) that the additional rent that might be charged over June 1,1944 rent was increased from 15% to 50%. From the foregoing facts, the tenant argues that the retention by the Legislature of the above-quoted proviso through the several changes in the definition of “ emergency rent ” between 1947 and 1957 (the most recent change being that of 1957 just referred to) indicates a legislative intent that so far as tenants in possession prior to June 1, 1939 are concerned, their ‘ ‘ emergency rent ’ ’ was not to be increased over the June 1,1944 rent unless by written agreement between landlord and tenant or fixation by the supreme court upon landlord’s application.
An analysis of the language of the above-quoted section and an inquiry into its legislative history, leads inescapably to the conclusion that the tenant’s argument, although imaginative, is without merit. As above stated the proviso to subdivision (c) of section 2 was added in 1947. In its 1947 Report (N. Y. Legis. Doc., 1947, No. 55, p. 15), the New York State Joint Legislative Committee to Study Rents states: “ The fourth and final amendment recommended for adoption is intended to provide another formula for determining the emergency rent in certain exceptional cases. That formula would apply only to tenants under certain leases entered into prior to June, 1939. Some such leases were made in a distress renting market. The Committee is convinced that leases made during the depths of the economic depression could not have contributed to the emergency which at that time lay in the distant future. The amendment is drawn so as to prevent any readjustment of rentals to an amount which would be greater than the rent allowable for comparable space within the same premises.”
*540 . In the light of this legislative history, it is evident that the proviso was enacted not to restrict increases in the emergency rent applicable to tenants taking possession prior to June 1, 1939, but to permit landlords, who had leased premises at abnormally low rents in the distress renting market prevailing in the depression ridden 1930’s, to obtain rents in excess of the emergency rent otherwise applicable. Moreover, the language of the proviso “ may be fixed” is permissive, not mandatory. If the rent thereunder is fixed by the Supreme Court, it is to be equal to the emergency rent chargeable for comparable space under a lease entered into after June 1, 1939, but prior to June 1, 1944. The clear language of the statute thus indicates that tenancies created in the late 1930s were likely to be at depressed rentals, and that landlords should be afforded the opportunity to obtain usual emergency rents.
I have examined all of the cases cited by the tenant in his brief and find that they have no bearing upon the questions herein presented.
Accordingly, the landlord is entitled to a final order awarding it possession of the subject premises. Warrant stayed to January 31, 1963. Use and occupation to be paid at present rental.